UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| SHANNON ZENO | CIVIL ACTION |
| versus | NO. 06-4096 |
| STATE OF LOUISIANA | SECTION: "B" (6) |

### REPORT AND RECOMMENDATION

This matter was referred to this United States Magistrate Judge for the purpose of conducting a hearing, including an evidentiary hearing, if necessary, and submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts. Upon review of the record, the Court has determined that this matter can be disposed of without an evidentiary hearing. See 28 U.S.C. § 2254(e)(2).[1] Therefore, for all of the following reasons, **IT IS RECOMMENDED** that the petition be **DISMISSED WITH PREJUDICE**.

---

[1] Pursuant to 28 U.S.C. § 2254(e)(2), whether to hold an evidentiary hearing is now a statutorily mandated determination. According to Section 2254(e)(2), the district court generally may hold an evidentiary hearing only when the petitioner has shown that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable (28 U.S.C. § 2254(e)(2)(A)(i)) or the claim relies on a factual basis that could not have been previously discovered through the exercise of due diligence (28 U.S.C. § 2254(e)(2)(A)(ii)); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner (28 U.S.C. § 2254(e)(2)(B)).

Petitioner, Shannon Zeno, is a state prisoner incarcerated at the Louisiana State Penitentiary, Angola, Louisiana. On July 22, 1998, he was convicted of one count of conspiracy to commit armed robbery and one count of armed robbery.[2] On July 27, 1998, he wassentenced to a term of forty-nine years and six months imprisonment on the conspiracy conviction and a term of ninety-nine years imprisonment on the armed robbery conviction. It was ordered that those sentences be served consecutively and without benefit of parole, probation, or suspension of sentence.[3] On August 13, 1998, he was found to be a third offender and was resentenced as such on the armed robbery conviction to a consecutive term of life imprisonment without benefit of parole, probation, or suspension of sentence.[4] On August 31, 1999, the Louisiana Fifth Circuit Court of Appeal affirmed his convictions and sentences.[5] On or after October 5, 1999, he filed with the Louisiana Supreme Court a related writ application, which was denied on June 30, 2000.[6]

On June 13, 2001, petitioner filed with the state district court an application for post-conviction relief.[7] That application was denied on June 29, 2001.[8] Petitioner's related writ

---

[2] State Rec., Vol. III of VIII, transcript of July 22, 1998, pp. 205-06; State Rec., Vol. I of VIII, minute entry dated July 22, 1998; State Rec., Vol. I of VIII, jury verdict forms.

[3] State Rec., Vol. I of VIII, minute entry dated July 27, 1998.

[4] State Rec., Vol. I of VIII, minute entry dated August 13, 1998.

[5] State v. Zeno, 742 So.2d 699 (La. App. 5th Cir. 1999) (No. 99-KA-69); State Rec., Vol. VII of VIII.

[6] State ex rel. Zeno v. State, 765 So.2d 1065 (La. 2000) (No. 2000-KH-0105); State Rec., Vol. VI of VIII.

[7] State Rec., Vol. VII of VIII.

[8] State Rec., Vol. VII of VIII, Order dated June 29, 2001.

applications were likewise denied by the Louisiana Fifth Circuit Court of Appeal on December 13, 2004,[9] and the Louisiana Supreme Court on December 16, 2005.[10]

On or after February 10, 2006,[11] petitioner filed the instant federal application for *habeas corpus* relief. In support of his application, he asserts the following claims:

---

[9] State *ex rel.* Zeno v. Cain, No. 04-KH-1411 (La. App 5th Cir. Dec. 13, 2004); State Rec., Vol. VIII of VIII. Although it is not reflected in the state court record submitted to this court, the Court of Appeal has since apparently been ordered to reconsider this ruling in light of the Louisiana Supreme Court's en banc ruling in State v. Cordero, 993 So.2d 203 (La. 2008). State *ex rel.* Zeno v. State, 993 So.2d 1245 (La. 2008).

[10] State *ex rel.* Zeno v. State, 917 So.2d 1100 (La. 2005) (No. 2005-KH-0403); State Rec., Vol. VIII of VIII. While pursuing his first state post-conviction application, petitioner also filed several supplemental applications. For example, he filed with the state district court a supplemental application on or about April 4, 2002. State Rec., Vol. VII of VIII. That application was denied on May 6, 2002. State Rec., Vol. VII of VIII, Order dated May 6, 2002. On or about June 14, 2002, he filed a copy of that same application with the Louisiana Fifth Circuit Court of Appeal. State Rec., Vol. VII of VIII. The appellate court forwarded the application to the state district court, which again denied relief on July 18, 2002. See State Rec., Vol. VII of VIII, Letter from Jerrold B. Peterson to Jon Gegenheimer dated July 3, 2002; State Rec., Vol. VII of VIII, Order dated July 18, 2002. On or about August 29, 2002, petitioner once more filed the supplemental application with the state district court. State Rec., Vol. VII of VIII. Relief was denied yet again on October 17, 2002. State Rec., Vol. VII of VIII, Order dated October 17, 2002.

[11] "A prisoner's habeas application is considered 'filed' when delivered to the prison authorities for mailing to the district court." Roberts v. Cockrell, 319 F.3d 690, 691 n.2 (5th Cir. 2003). Petitioner dated his application "2-10-06," while the accompanying memorandum was dated June 19, 2006. In his cover letter, petitioner states that he gave the application to authorities for mailing on February 10, 2006, and he provides a copy of what he purports is a prison mailing receipt to support that allegation. Apparently, he is contending that (1) he first attempted to file his federal application in February, (2) that the application was lost in the mail, and (3) he resubmitted the application, this time with an accompanying memorandum, in June. Although the Court finds petitioner's allegations regarding the supposed February submission dubious, this uncertainty is ultimately of no moment because his federal application is untimely regardless of whether it was filed in February or June. Therefore, for the purposes of this decision, the Court will simply assume that the application was in fact first given to prison authorities for mailing on February 10, 2006.

1. There was insufficient evidence to support petitioner's conviction;

2. The jury instructions were erroneous;

3. The trial judge erred in allowing the introduction of hearsay character evidence;

4. The prosecutor engaged in misconduct by portraying petitioner as dangerous during trial;

5. The prosecutor engaged in misconduct by making prejudicial comments during closing arguments;

6. Petitioner's sentences were excessive;

7. The trial court erred in failing to admonish the jury or grant a mistrial based on the prosecutor's improper comments; and

8. The prosecutor made prejudicial comments concerning petitioner.

## Timeliness

The state argues that petitioner's federal application is untimely. For the following reasons, this Court agrees.

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") generally requires that a petitioner bring his Section 2254 claims within one (1) year of the date on which his

underlying criminal judgment becomes "final." Under the AEDPA, a judgment is considered "final" upon the expiration of time for seeking direct review. 28 U.S.C. § 2244(d)(1)(A).[12]

On August 31, 1999, the Louisiana Fifth Circuit Court of Appeal affirmed petitioner's convictions and sentences. From that point, he then had thirty days to seek review of that judgment by filing a writ application with the Louisiana Supreme Court. Louisiana Supreme Court Rule X, § 5(a). Therefore, at the latest, the underlying state criminal judgment in this case became final on September 30, 1999, when that period expired without petitioner seeking such further review in a timely manner. Butler v. Cain, 533 F.3d 314, 317 (5th Cir. 2008); McGee v. Cain, 104 Fed. App'x 989, 991 (5th Cir. 2004); see also Roberts v. Cockrell, 319 F.3d 690, 694 (5th Cir. 2003).

In the "traverse" he filed in this proceeding, petitioner disputes the foregoing, stating:

> What Butler [the state's representative in this proceeding] does not suggest is that after the State Appeals Court affirmed Zeno's conviction of August 31, 1999 – Zeno – within 14 days of affirmance – motioned the Appeals Court for a rehearing on September 3, 1999 – 3 days after affirmance. (See attached exhibits: prison mailing receipt for rehearing.)
> Furthermore, Butler points out that approximately four and one-half months later, on January 12, 2000, Zeno filed an untimely writ application with the Louisiana Supreme Court seeking review of the Appeals Court affirmance of conviction.
> Notably, the folder file in Butler's possession is missing documentation of Zeno's petition for rehearing with the State's Appeal Court. The petition for rehearing filed September 3, 1999 – by Zeno – although ignored – the petition was pending in the Appeals Court for approximately four and one-half months or until Zeno filed a writ to the Louisiana Supreme Court on January 12, 2000.

---

[12] Although § 2244(d)(1) has alternative provisions providing for other events which can trigger the commencement of the statute of limitations, those alternative provisions are not applicable in the instant case.

After not receiving any responses from the Appeals Court – four and one half months later – Zeno filed an application to the Louisiana Supreme Court on January 12, 2000.[13]

This Court rejects those contentions in the "traverse" for several reasons.

First, the only "evidence" petitioner submits in support of his contention that he filed a motion for rehearing is an alleged prison mailing receipt attached to the traverse. That document purports to show that a prison classification officer accepted from petitioner legal mail to be forwarded to the Louisiana Fifth Circuit Court of Appeal on September 3, 1999. Without more, that unauthenticated and uncorroborated document, which easily could have been fabricated at any time, is hardly convincing proof.

Second, the state has produced a verification from the Clerk of Court of the Louisiana Fifth Circuit Court of Appeal stating that petitioner did not in fact file a motion for rehearing.[14]

Third, for the following reasons, the Court finds that the Louisiana Supreme Court writ application itself refutes any contention that a motion for rehearing had been filed.[15] Petitioner himself dated his writ application dated *October 5, 1999*, a mere thirty-five days after the decision of the Court of Appeal.[16] That fact stands in stark contradiction to his contention that he filed a

---

[13] Rec. Doc. 15, pp. 3-5.

[14] Rec. Doc. 16.

[15] At the time the state filed its response in this proceeding, that writ application was unavailable due to complications arising from Hurricane Katrina. However, this Court was recently able to procure a copy of that application from the Clerk of Court of the Louisiana Supreme Court. That copy is being separately filed into this federal record.

[16] According the Office of the Clerk of the Louisiana Supreme Court, the writ application was initially received by the court in October and returned to petitioner unfiled because he failed to

motion for rehearing and awaited a ruling for over four months before filing a writ application with the Louisiana Supreme Court. Further, the "Writ Application Filing Sheet" signed by petitioner and filed with his Louisiana Supreme Court writ application had a section entitled "REHEARING INFORMATION" in which he was instructed to indicate, *inter alia*, the date any motion for rehearing was filed. That section on petitioner's filing sheet was left blank, indicating that no rehearing had been sought. Moreover, in the narrative section of the writ application setting forth the procedural history of the case, petitioner noted that his convictions were affirmed on August 31, 1999, and he made no mention of a motion for rehearing. The absence of any mention of a rehearing motion is conspicuous, in that, had one been filed, it seems logical that he would have noted it, as he now does, in an attempt to excuse the late filing of the writ application.

In light of the absence of any colorable evidence showing that a motion for rehearing was in fact filed, the evidence to the contrary, and the apparent misrepresentations in petitioner's traverse on this issue, this Court rejects petitioner's contention that he sought such a rehearing from the Louisiana Fifth Circuit Court of Appeal. Therefore, in order to be timely, petitioner's Louisiana Supreme Court writ application had to be filed no later than September 30, 1999. Because petitioner concedes that the writ application was not filed by the date and because he dated the writ application October 5, 1999, it is clear the application was untimely filed. As a result, as previously explained, petitioner's convictions and sentences became final for AEDPA purposes on September 30, 1999.

---

include the required supporting documentation. In an envelope postmarked on November 29, 1999, and received by the Clerk of Court on December 1, 1999, petitioner then resubmitted the application for filing with the supporting documentation. After the usual delay caused by that court's preliminary screening of such applications, the writ application was then accepted for filing and file-stamped by the Clerk of Court on January 12, 2000.

Accordingly, his federal statute of limitations commenced on that date and expired one year later, i.e. on Monday, October 2, 2000,[17] unless that deadline was extended through tolling.

The Court first considers statutory tolling. The AEDPA provides that the statute of limitations is tolled for the period of time during which a properly filed application for state post-conviction relief or other collateral review attacking a conviction or sentence is pending in state court. 28 U.S.C. §2244(d)(2). However, petitioner had no such applications pending before any state court at any time from September 30, 1999, through October 2, 2000. Although petitioner's untimely Louisiana Supreme Court writ application was pending during that period, it is clear that he receives no statutory tolling credit for that application. See Butler v. Cain, 533 F.3d 314, 320 (5th Cir. 2008).[18]

---

[17] The Court is aware that, because the year 2000 was a leap year, the three-hundred-sixty-fifth day of petitioner's one-year period was September 29, 2000. However, courts have held that it is the "anniversary date" on which the AEDPA's statute of limitations expires, regardless of the existence of an additional day due to a leap year. See, e.g., United States v. Hurst, 322 F.3d 1256 (10th Cir. 2003); United States v. Marcello, 212 F.3d 1005, 1010 (7th Cir. 2000). Moreover, because September 30 fell on a Saturday in 2000, the limitations period was extended through the following Monday. See Flanagan v. Johnson, 154 F.3d 196, 202 (5th Cir. 1998) ("We hold that [Fed.R.Civ.P.] 6(a) applies to the computation of the one year limitation period in § 2244(d) of AEDPA."); Fed.R.Civ.P. 6(a) (if the last day of an applicable period is a Saturday, a Sunday, or a legal holiday, the period runs until the end of the next day that is not one of those days).

[18] The Court notes that petitioner also filed during that period a motion for production of transcripts on August 10, 2000, which was denied on August 29, 2000. State Rec., Vol. VII of VIII. However, that filing cannot fairly be considered an application for state post-conviction relief or other collateral review for tolling purposes because it was preliminary in nature and did not directly call into question the validity of his conviction or sentence. Parker v. Cain, Civ. Action No. 02-0250, 2002 WL 922383, at *2 n. 22 (E.D. La. May 1, 2002), certificate of appealability denied, No. 03-30107 (5th Cir. June 23, 2003); Boyd v. Ward, Civ. Action No. 01-493, 2001 WL 533221, at *4 (E.D. La. May 15, 2001), certificate of appealability denied, No. 01-30651 (5th Cir. Aug. 22, 2001). However, even if petitioner were given tolling credit for that motion, his federal application would still be untimely.

The United States Fifth Circuit Court of Appeals has held that the AEDPA's statute of limitations can, in rare and exceptional circumstances, also be equitably tolled. See Davis v. Johnson, 158 F.3d 806, 811 (5th Cir. 1998). However, "[e]quitable tolling applies principally where the plaintiff is actively misled by the defendant about the cause of action or is prevented in some extraordinary way from asserting his rights." Coleman v. Johnson, 184 F.3d 398, 402 (5th Cir. 1999) (quotation marks omitted). A petitioner bears the burden of proof to establish entitlement to equitable tolling. Alexander v. Cockrell, 294 F.3d 626, 629 (5th Cir. 2002). Petitioner has brought forth no evidence demonstrating that he is entitled to such tolling, and this Court knows of no reason that would support equitable tolling of the statute of limitations in this case.

Because petitioner is entitled to neither statutory tolling nor equitable tolling, his federal application for habeas corpus relief had to be filed on or before October 2, 2000, in order to be timely. His federal application was no earlier than February 10, 2006, and it is therefore untimely.

**RECOMMENDATION**

Accordingly, **IT IS RECOMMENDED** that the petition for federal *habeas corpus* relief filed by Shannon Zeno be **DISMISSED WITH PREJUDICE**.

---

The Court also notes that petitioner subsequently sought post-conviction relief in the state courts; however, state applications filed *after* the expiration of the federal statute of limitations have no bearing on the timeliness of a habeas petitioner's federal application. See Butler, 533 F.3d at 318; Scott v. Johnson, 227 F.3d 260, 263 (5th Cir. 2000); Magee v. Cain, Civ. Action No. 99-3867, 2000 WL 1023423, at *4, aff'd, 253 F.3d 702 (5th Cir. 2001); Williams v. Cain, Civ. Action No. 00-536, 2000 WL 863132, at *2 (E.D. La. June 27, 2000).

A party's failure to file written objections to the proposed findings, conclusions, and recommendation contained in a magistrate judge's report and recommendation within 10 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. <u>Douglass v. United Services Auto. Ass'n</u>, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this twelfth day of March, 2009.

**LOUIS MOORE, JR.**
**UNITED STATES MAGISTRATE JUDGE**